

45 Fremont Street
Floor 26
San Francisco, CA 94105
+1 415 262 4500 Main
+1 415 262 4555 Fax
www.dechert.com

**HARTLEY M.K. WEST**
*Partner*

Hartley.West@dechert.com
+1 415 262 4511 Direct
+1 415 262 4555 Fax

March 28, 2025

Via ECF

The Honorable Susan van Keulen
U.S. Magistrate Judge
United States District Court
Northern District of California
280 South 1st Street
San Jose, CA 95113

Re: *United States v. Chen*, No. 5:19-cr-00111-BLF

Your Honor:

I write to outline proposed pretrial release conditions for Danhong "Jean" Chen in the above-captioned matter, in which she is scheduled to appear for a detention hearing on March 31, 2025.

Appropriately, neither the government nor Pretrial Services appears to regard Ms. Chen as a danger to the community. Their concern arises instead from Ms. Chen residing in China for the last few years – notwithstanding there having been no criminal charges filed against her when she left the United States – and having to be extradited from Kyrgyzstan, where she was arrested in April 2024. However, this Court has previously fashioned conditions of release for a defendant who was unwillingly extradited to the district. In a 2018 extradition case, the Honorable Charles R. Breyer held that the following restrictions would reasonably assure the defendant's appearance at future proceedings:

- private armed security on duty 24 hours a day with video surveillance;
- a substantial secured bond;
- house arrest, with travel only for meetings with counsel, medical appointments, and court appearances;
- no access to passports or other travel documents; and
- strict supervision by Pretrial Services.

*United States v. Lynch*, 18-cr-00577-CRB-1, 8-9 (N.D. Cal. May. 11, 2023).

If these restrictions were sufficient in *Lynch* – where the defendant not only fought extradition, but also was not a U.S. citizen, had no significant ties to the San Francisco area or the United States, had a net worth of $400-$450 million, and had an alleged co-conspirator who had already been convicted of fraud – they are certainly sufficient for Ms. Chen, a U.S. citizen of significantly less





wealth whose daughter lives in the Bay Area and who is suffering from a serious leg injury that requires urgent surgery. Accordingly, I propose:

1. Ms. Chen shall deliver to the Clerk of Court a deed for her home, located at 90 Broadacres Road, Atherton, California 94027 ("the Atherton property"), with an estimated value per Zillow of $10,044,700.[1]

2. Ms. Chen shall be confined to the Atherton property, and may only travel for meetings with counsel, medical appointments, and court appearances, all of which must be located in the San Mateo and Santa Clara counties. Any further travel must be approved by the United States Attorney's Office and the Court.

3. Ms. Chen shall be subject to electronic monitoring.

4. Ms. Chen shall be guarded on a 24-hour basis by a private security company at Defendant's expense, including video surveillance and an armed guard. The costs of supplying the private security for one month shall be paid in advance. The private security company, the security arrangement, and any changes thereto, shall be approved by the United States Attorney's Office and the Court.

5. Ms. Chen shall surrender all travel documents of any kind whatsoever, including any document which may be used to enter or exit any country, genuine or not. The government represents that they have possession of Ms. Chen's passports issued by the United States and the Commonwealth of Dominica. Ms. Chen shall not apply for or otherwise obtain any new travel documents, genuine or not.

6. Ms. Chen shall be subject to strict supervision by Pretrial Services and adhere to any other conditions imposed by the Court.

## Relevant Background

### A. Ms. Chen's Background

Ms. Chen is a 60 year old United States citizen with no prior criminal history. She is a licensed attorney whose daughter attends UC Berkeley and resides in the family home located in Atherton, California. Ms. Chen immigrated to the United States in 1991, earned an LLM from Boston University in 1997, and went on to establish her own San Jose law practice, the Law Offices of

---

[1] Zillow, *90 Broadacres Rd, Atherton, CA 94027*, https://www.zillow.com/homedetails/90-Broadacres-Rd-Atherton-CA-94027/15597960_zpid/ (last visited Mar. 25, 2025).





Jean D. Chen. Until 2018, Ms. Chen was involved with and supported multiple cultural organizations and events in the Bay Area, including the Fountain of Dreams Foundation.

Ms. Chen was previously married to co-defendant Jianyun ("Tony") Ye. It was a difficult marriage, as Mr. Ye became aggressive when he drank too much, which was often. On more than one occasion, Mr. Ye threw things violently and Ms. Chen escaped to a hotel to stay. Mr. Ye also had numerous affairs. They divorced in 2017, although they continued residing in the same house with their daughter. Now a 22 year old student at UC Berkeley, the daughter returns to her family home, where her father has been residing, during school breaks and on some weekends.

B. Ms. Chen's Status Between October 2018 and March 2025

On October 16, 2018, Ms. Chen learned that her mother (then in her 80s) had fallen, broken her back, and was in the emergency room. Ms. Chen made arrangements so that she could go to China to care for her mother. Mr. Ye promised to care for their then 16 year old daughter.

On October 18, 2018, before departing for China, Ms. Chen took the train – her preferred form of transportation – to Seattle where her friend was waiting for her for a pre-planned trip to Canada. She and her friend took the bus from Seattle to Vancouver. A couple days later, Ms. Chen flew to China to take over her mother's care from her sister, who lived two hours from their mother and already helped care for her baby granddaughter.

Ms. Chen's mother remained in the emergency room for approximately three months, having steel rods surgically placed in her spine and requiring oxygen to breathe and a feeding tube through her nose to provide sustenance. Staying at her mother's home, Ms. Chen went to the hospital every day, watching the monitor and running to get the doctors whenever vital signs worsened. Ms. Chen's sister visited when she could, but Ms. Chen was the primary family member looking out for her mother. When her mother was released to intensive care, where the nurses came by only once an hour, Ms. Chen monitored her mother, frequently needing to physically restrain her mother from pulling out the nasal feeding tube, as well as rotating her mother's body three or four times a day so that she would not get bed sores.

After four or five months in intensive care, Ms. Chen's mother was released to her home, but she is permanently disabled and requires significant support. Ms. Chen lived with her mother to care for her, along with the part-time help she received.

Over this time, Ms. Chen took a few brief trips. She flew to Vancouver on November 16, 2018, to meet her daughter and Mr. Ye for a ski trip over Thanksgiving Break. Her daughter and Mr. Ye did not show up due to Mr. Ye's arrest. From Vancouver, she flew to London on November 26, 2018, for a preplanned business trip. She took other brief trips to advise Chinese companies doing





business abroad, including to Grenada and the Commonwealth of Dominica. Ms. Chen's sister would travel to their mother's house to provide the necessary care. Ms. Chen's daughter also traveled to China to spend time with her mom around January 2019 and in the summer of 2019.

In January 2020, China imposed a lock down due to Covid-19, which was in effect until early 2023. Once it lifted, Ms. Chen applied for an exit visa to enable her to travel outside of China. However, in early June 2023, she fell and badly broke her left knee. She was taken by ambulance to the emergency room for immediate surgery, where hospital staff inserted steel wires to assist the bone's proper healing. Ms. Chen remained in the hospital for three months. Relevant medical records are attached to this letter as Exhibits A[2] and B. On September 21, 2023, Ms. Chen was diagnosed with a blood clot in her left leg, caused by knee bending during a two-hour car ride. (Exhibit A at 32). As part of her recovery, Ms. Chen's doctor's instructed that she not travel for more than three hours. (Exhibit A at 17). Apparently, the pressure at elevation can increase the chance of blood clots, a dangerous condition from which Ms. Chen's father died.

Ms. Chen's medical records show that she was scheduled to have the wires removed by April 2024. (Exhibit A at 4). However, when she traveled to Kyrgyzstan to advise a Chinese solar company on a potential business opportunity (having taken the train to the city of Urumqi so that she would be closer to the Kyrgyzstan border and the 2 hour and 10 minute flight would be safe for her), she was arrested by Kyrgyzstani authorities on the United States' red notice.

During her 11 months at the Kyrgyzstan detention facility, she did not receive appropriate medical care. The abysmal conditions of Kyrgyzstani detention facilities, including their lack of medical care, are notorious. *See, e.g.*, U.S. Dep't of State, Kyrgyz Republic 2023 Human Rights Report 4 (2023) ("Prison conditions were harsh and sometimes life threatening due to food and medicine shortages, overcrowding, substandard health care, lack of heat, and mistreatment.").[3] While Ms. Chen was seen by a doctor promptly upon her arrival in the United States, she is advised that the earliest they can schedule her surgery is at least four months out. In the meantime, she experiences

---

[2] Ms. Chen's medical records from China, which constitute Exhibit A, were previously publicly filed as exhibits in *SEC v. Chen*, *et al.*, No. 3:18-cv-06371-LB (N.D. Cal. Feb 1, 2024), ECF No. 194. Thus, they are part of the public record, and we have not sought to seal these records. Her medical records from Elmwood Correctional Facility are submitted under seal as Exhibit B.

[3] *See also* International Partnership for Human Rights, *Monitoring the Criminal Justice Sector in Kyrgyzstan: The Penitentiary System* (Mar. 12, 2025), https://iphronline.org/articles/monitoring-the-criminal-justice-sector-in-kyrgyzstan-the-penitentiary-system/ ("Although healthcare services exist, prisoners report limited access to medical assistance and adequate examinations, a shortage of specialized medical professionals, and insufficient medical examinations and supplies."); *id.* ("Overcrowding, lack of proper hygiene, and limited access to clean water, nutritious food, and medical services remain widespread problems.").





significant pain from the wires in her left leg and pain in her right leg and lower back due to overcompensation. (Exhibit B at 16). Ms. Chen also has concern that her bone is growing back in a manner that could cause permanent deformity, due to the wires staying far past the medically recommended removal date.

C. The Charges

The United States filed charges against Ms. Chen and Mr. Ye on March 7, 2019. The indictment includes ten visa fraud counts alleging false statements in Forms I-526 that Ms. Chen's firm submitted in support of client-investors' EB-5 visa program applications. The indictment further alleges aggravated identity theft based on Ms. Chen and Mr. Ye's allegedly signing the name of someone associated with their business, as well as obstruction of the DOJ and parallel SEC investigation. Mr. Ye was additionally charged with identity theft.

Mr. Ye pled guilty to conspiring to defraud the United States and to obstruction on May 25, 2021. (CR 93). Mr. Ye admitted that he was the one who managed the funds in the Golden State Regional Center, which received EB-5 investment funds, and that he ensured every dollar of investor funds was spent on designated development projects. (Ye Sentencing Mem.; CR 109 at 8-9).

<u>Argument</u>

A. Legal Standard

Consistent with the Bail Reform Act and the presumption of innocence, Ms. Chen must be released on her personal recognizance or upon execution of an unsecured bond unless "such release will not reasonably assure [her] appearance [] as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Once that determination is made, the law requires pre-trial release "subject to the least restrictive further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required.'" 18 U.S.C. § 3142(c)(1)(B). "[T]o determine whether the Government's [proposed conditions of pre-trial release are] excessive," the Court "must compare [them] against the interest the Government seeks to protect by means of [such conditions]." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

"[T]he right to bail should be denied only for the strongest of reasons" and, to deny a defendant of this right, the government must first "demonstrate[] by a preponderance of the evidence that no condition or combination of conditions will reasonably assure [the defendant's] appearance." *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).





B. Analysis

The government's request for detention is based solely on risk of flight. Ms. Chen left the United States for China before any indictment to care for her mother after she broke her back and was on oxygen and a feeding tube. While the SEC filed its civil case the day that Ms. Chen left the Bay Area, she did not leave the country to escape the case, as demonstrated by her continuously litigating it through counsel throughout her time overseas.

The United States also points to Ms. Chen having a passport from the Commonwealth of Dominica in a different name. Ms. Chen applied for this passport in 2017 as matter of routine through Dominica's investment program due to a business deal on which she was assisting. She used this passport – in her true name – only once, when traveling to the UK for business in November 2018. When, as a result of harassment she began receiving in China due to the investigations, Ms. Chen requested a name change in Dominica and received a new passport in the name Maria Sofia Taylor on January 2019. However, Ms. Chen used the passport under the alias only within China for the purpose of avoiding harassment. When she traveled for business to Grenada through Germany on January 13, 2019, as well as to Kyrgyzstan on April 8, 2024, she did so using her U.S. passport in her true name. (She had no other aliases despite Pretrial Services' reference to her having 24).

Indeed, Ms. Chen has little incentive to flee. She has already been detained for nearly a year, including 11 months in notoriously miserable conditions at the Kyrgyzstani detention center. The law requires that she receive credit for her time in detention. 18 U.S.C. 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time [s]he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed . . . that has not been credited against another sentence."). Even if she were convicted on all offenses, including aggravated identity theft, the Sentencing Guidelines do not anticipate a substantially longer sentence. Further, Ms. Chen is eager to be reunited with her daughter, with whom she has spent little time since the Covid-19 lockdown began in January 2019. It is also critical for her to have surgery on her knee to alleviate her pain.

That the United States extradited Ms. Chen over her objection is not sufficient basis to detain her. Courts have repeatedly held that home detention with 24-hour monitoring enforced by an armed security detail, together with a secured bond, is sufficient to reasonably assure the Court of a defendant's appearance at future proceedings, including where a defendant has fought extradition. Indeed, the Honorable Charles R. Breyer held that these conditions were sufficient in the case of a well-resourced, non-citizen defendant who had fought extradition and whose co-defendant had been convicted after a trial by jury. *See Lynch*, No. 18-CR-00577-CRB-1, at *1-9 (releasing defendant who was extradited to the United States on conditions of a secured bond, home arrest, armed guard supervision and surveillance, surrender of travel documents, and strict supervision by Pretrial Services). Similarly, a Chinese citizen arrested in London on criminal charges filed in this

district was released with a 24-hour armed security detail. *See United States v. Zhang Li*, No. 3:23-cr-00220 (N.D. Cal. July 18, 2023).

Such conditions have also been accepted for defendants possessing immense wealth and resources that would enable them to fund flight. *See United States v. Madoff*, 586 F. Supp. 2d 240, 244 (S.D.N.Y. 2009) (permitting pretrial release upon conditions of a $10 million bond and home detention with 24-hour monitoring at defendant's wife's expense); *United States v. Dreier*, 596 F. Supp. 2d 831, 833-34 (S.D.N.Y. 2009) (permitting pretrial release upon conditions of a $10 million bond and home detention secured by on-premises security guards).

Unlike the defendants in the *Lynch* and *Zhang* cases, Ms. Chen is a United States citizen with a strong connection to the San Francisco Bay Area, where her daughter resides. And unlike all of the above examples, Ms. Chen does not possess "immense wealth". Rather her assets include:

- The Atherton property, which is valued at approximately $10 million according to Zillow, and is encumbered by a mortgage of approximately $2 million and a private loan of approximately $3.5 million. The home is owned 50% by Ms. Chen and 50% by the Chenye Irrevocable Trust, for which her daughter is the beneficiary. The trustee, Tianqi Liu, is an accountant and longtime professional friend of Ms. Chen's.

- A savings account, which her sister funds to pay Ms. Chen's mortgage and property taxes. The Pretrial Services Report inaccurately states that the account is funded with $30,000-$70,000 each month to cover these expenses and drawn to zero each month. This was the result of an error by the undersigned counsel and by the defendant in communicating with Pretrial Services. The account is funded periodically as it becomes depleted, resulting in varying monthly balances.

- Retirement accounts valued at approximately $50,000.

- While the Pretrial Services Report references Ms. Chen owning property in North Carolina, this property was sold approximately eight years ago.

Even if Ms. Chen were otherwise inclined to flee, the highly restrictive conditions proposed for her release – like those imposed by judges of this district and elsewhere to prevent flight of the most well-resourced defendants, including non-citizens without significant U.S. ties – are sufficient to reasonably assure her appearance at all future court proceedings.





Accordingly, we propose:

1. Ms. Chen shall deliver to the Clerk of Court a deed for her home, located at 90 Broadacres Road, Atherton, California 94027 ("the Atherton property"), with an estimated value per Zillow of $10,044,700.[4]

2. Ms. Chen shall be confined to the Atherton property, and may only travel for meetings with counsel, medical appointments, and court appearances, all of which must be located in the San Mateo and Santa Clara counties. Any further travel must be approved by the United States Attorney's Office and the Court.

3. Ms. Chen shall be subject to electronic monitoring.

4. Ms. Chen shall be guarded on a 24-hour basis by a private security company at Defendant's expense, including video surveillance and an armed guard. The costs of supplying the private security for one month shall be paid in advance. The private security company, the security arrangement, and any changes thereto, shall be approved by the United States Attorney's Office and the Court.

5. Ms. Chen shall surrender all travel documents of any kind whatsoever, including any document which may be used to enter or exit any country, genuine or not. (The government represents that they have possession of Ms. Chen's passports issued by the United States and the Commonwealth of Dominica.) Ms. Chen shall not apply for or otherwise obtain any new travel documents, genuine or not.

6. Ms. Chen shall be subject to strict supervision by Pretrial Services and adhere to any other conditions imposed by the Court.

<u>Conclusion</u>

Any risk of Ms. Chen's flight can be fully mitigated by strict conditions of release encompassing (1) the posting of her most significant asset, the Atherton Home, as security for her bond; (2) home detention in the Atherton Home with limited exceptions for meetings with counsel, medical appointments, and court appearances; (3) electronic monitoring; (4) armed security with 24-hour surveillance at the Atherton Home; (5) surrendering of any travel documents (which are already in

---

[4] Zillow, *90 Broadacres Rd, Atherton, CA 94027*, https://www.zillow.com/homedetails/90-Broadacres-Rd-Atherton-CA-94027/15597960_zpid/ (last visited Mar. 25, 2025).

the government's possession); and (6) strict supervision by Pretrial Services. We greatly appreciate the Court's careful consideration of this matter.

Sincerely,

*/s/ Hartley M. K. West*
Hartley M. K. West

CC: AUSA Lloyd Farnham