CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

RAVI T. NARAYAN (CABN 331858)
Deputy Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (415) 436-7200
    Lloyd.farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>DANHONG "JEAN" CHEN<br>aka MARIA SOFIA TAYLOR,<br><br>    Defendant. | CASE NO. 19-CR-00111 BLF<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S OBJECTION TO ORDER OF DETENTION AND MOTION FOR REVOCATION OF DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(b) |

# I. INTRODUCTION

The risk of flight posed by defendant Danhong Jean Chen is shown, in part, by the fact that she actually fled the United States before the charges were filed and then avoided the jurisdiction of the Court after the indictment was unsealed for five years. Chen has the proven intention and the financial means to remain outside the United States indefinitely, and she was arrested only after she traveled to a country, the remote Kyrgyz Republic, where she likely believed she was safe from extradition. Based on these facts and others presented during the bail proceedings before the Magistrate Judge in this case, Chen should be detained pending trial in this case.

Magistrate Judge Susan van Keulen ordered Chen detained after considering information and materials presented by the parties at two hearings addressing detention (the original hearing and a motion to revoke the order). Though this Court must look at those findings without deference, there is no new information presented by the defendant that should lead this Court to reach a different conclusion. In particular, the following facts, found largely undisputed by Magistrate Judge van Keulen and still not challenged by Chen, warrant this Court denying the motion to revoke the detention order:

> In 2018 Chen travelled by train and then bus across the border as the SEC filed a civil complaint alleging securities fraud.
>
> She left behind her former husband and their minor daughter and for more than five years did not return on her own volition.
>
> When her former husband and co-defendant was arrested a month after Chen left, as he also tried to leave the country, and after files against Chen were unsealed, she did not travel to any country where she risked arrest on a U.S. warrant (until she travelled to the Kyrgyz Republic in April 2024—where she likely believed would not face arrest or extradition).
>
> She has the financial means to flee and live indefinitely outside the reach of U.S. law enforcement, as shown by the fact that she did in fact live in China for five years while also continuing to transfer $30,000-$70,000 at a time to pay a mortgage and property tax on the Atherton house.
>
> The most significant asset proposed to secure a bond (the Atherton house) is compromised because she transferred half of the property to a purported "irrevocable" trust and because the SEC action seeks to recover the house as purchased with funds obtained by Chen during the fraud alleged in the SEC complaint.

Despite the fact that Chen is not disputing these issues and that these facts still accurately describe the circumstances of her departure from the U.S., her time away, and her financial means, Chen is now

before the Court asking for release on conditions that are even less restrictive that those originally proposed and rejected by the Magistrate Judge.

Because this defendant does not present any new information or facts that were not also presented during the proceedings before the Magistrate Judge, this Court can decide this objection to detention without a hearing. Based on the record before the Court, and the circumstances that establish, by a preponderance of evidence, Chen poses a risk of flight that cannot be mitigated by conditions of release and this Court should deny the defendant's motion to revoke the order of detention.

## II.     LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance" of the defendant. 18 U.S.C. § 3142(e)(1). Detention is appropriate if the Court finds either a danger to the community or a flight risk; the government need not make a showing on both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Detention based on risk of flight need only be supported by a preponderance of the evidence. *Id.*

A district court conducts a de novo review of a magistrate's order or detention. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). On appeal of a magistrate judge's detention order, the Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference," and the Court is not limited to facts already presented to the magistrate judge. *Id. at* 1193.

The rules of evidence do not apply at a detention hearing, 18 U.S.C. § 3142(f), and the government may present evidence by way of evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## III.     BACKGROUND

### A.     The Charges in this case have been pending since 2019

Defendant Danhong "Jean" Chen is charged by indictment with ten counts of visa fraud, under 18 U.S.C. § 1546(a), obstruction of justice under both 18 U.S.C. § 1512(b)(3) and 18 U.S.C. § 1505, and aggravated identity theft under 18 U.S.C. § 1028A. Dkt. 27. Chen was charged in the March 2019

indictment along with her former spouse, Jianyun "Tony" Ye.  At the time the indictment was filed Chen had already left the United States, though Ye had been arrested in November 2018 before he also attempted to leave the country.  *See* Dkt. 1 (criminal complaint filed Nov. 20, 2018).

The indictment alleges that Chen knowingly signed and submitted false applications to the United States Citizenship and Immigration Services ("USCIS") in connection with the United States EB-5 Visa Program, a program that allowed foreign investors in U.S. businesses to obtain provisional Green Cards.  The applications submitted by Chen contained false statements and representations including fraudulent signatures, false assertions regarding the legal representation of the foreign investors, and false commitments to use the foreign investor funds as disclosed in agreements with the investors.  For example, Chen and Ye used various nominees to disguise Chen's control and ownership of the entities accepting foreign investor funds, including using the identity of an individual with the initials K.C. in connection with financial accounts.  Another individual referred to by initials K.R. had her identity used to make it appear that Chen was not in control of an entity receiving foreign investor funds.  In addition, Chen and Ye attempted to conceal the false nature of the applications and their involvement with the EB-5 investment vehicles during investigation conducted by the United States Securities and Exchange Commission ("SEC").  The indictment also alleges Chen and Ye obstructed the investigations of the SEC and FBI, in part by instructing individuals to destroy and withhold evidence and to make false statements to SEC investigators.

### B.     The SEC investigation and civil enforcement action

Prior to being criminally charged, Chen and Ye were the subjects of multi-year investigation by the Securities and Exchange Commission for securities fraud and other violations of the federal securities laws.  As described in the indictment, Chen was aware of the SEC investigation and took steps to obstruct it—including directing a witness to mislead to SEC investigators during an investigative interview. The SEC filed its civil enforcement action against Chen, Ye, and other individuals and entities, on October 18, 2018, and the SEC publicly announced the complaint and allegations that day. *SEC v. Jean Danhong Chen, et al.*, NDCA No. 18-CV-06371, Dkt. 1 (complaint filed Oct. 18, 2018).

The SEC civil action is still pending.  During the course of the litigation the SEC sought to depose Chen, as permitted under the Federal Rules of Civil Procedure.  Chen continually resisted

coming to the United States to sit for a deposition, as the SEC requested, and after months of litigation during which Chen refused to travel to the United States, Chen obtained an order from the judge overseeing that case allowing her to sit for the deposition outside the United States.

### C.     Chen Left the United States on October 18, 2018 and did not return

On October 18, 2019—the day that the SEC announced the charges against her—Chen left the United States and did not return until she was brought back to the United States in 2025 in custody. She has admitted that she left the country in an unusual manner, first by train to Seattle and then taking a bus over the border to Vancouver, Canada. Dkt. 130 at 3. From there, she flew to China. Id.

The following month, Chen's former spouse and business partner Ye, along with their minor daughter, attempted to travel to Vancouver by plane. Ye had purchased the tickets on November 19, 2018, for a flight from San Francisco on November 20, 2018. Dkt. 1 at 8. Ye was arrested before that flight departed, and charged by criminal complaint with identity theft. Dkt. 1.

Chen is a naturalized U.S. citizen, but shortly before she fled to Canada and then China she obtained citizenship and a passport from the Commonwealth of Dominica, a Caribbean island country that is notorious for providing citizenship to foreign nationals for a fee. Chen first obtained Dominica citizenship and shortly after a Dominica passport on October 12, 2018, only days before she left the U.S. Dkt. 152-1 at 54. Later, after she had traveled to China and Ye was arrested trying to fly to Canada, On December 20, 2018 Chen had changed her name in Dominica, to "Maria Sofia Taylor," and a new passport was issued to her in that name. *Id.* When she was later detained in Kyrgyz Republic in 2024, she had that passport with her. Exh. 1.

On March 7, 2019, the grand jury returned the indictment described above, charging both Chen and Ye with visa fraud and identity theft in connection with their fraudulent use of the EB-5 visa program. They were both also charged with obstruction of the SEC and FBI investigations. The indictment was filed under seal but was unsealed in its entirety on March 25, 2019, when the co-defendant Ye was arraigned on the charges against him contained in the indictment. Dkt. 32.

After that indictment was unsealed, and Chen (who was represented by U.S. counsel in the SEC case and in conversations with the criminal prosecutors) was aware of the criminal charges, it does not appear that she travelled outside China until April 2024.

1   Chen obtained new entry documents and a residency visa to allow her to reenter and to extend
2 her stay in China as recently as the end of 2023, a few months before she traveled to Kyrgyz Republic.
3 See e.g., Dkt. 152-1 at 63 (Q1 entry visa issued on October 25, 2023).  In November 2023, Chen
4 obtained a residency permit to allow her to legally remain in China until at least December 2024—
5 indicating she had no imminent plans to return to the United States. Dkt 152-1 at 66 (residency permit
6 issued on Nov. 28, 2023).

7   Ye later pled guilty to charges in the indictment and was sentenced by the Honorable Lucy Koh
8 on November 17, 2021.  Ye was sentenced to one year in prison, and during the sentencing hearing
9 Judge Koh noted that she believed Chen was more culpable than Ye. Dkt. 127 at 96 (transcript of Nov.
10 17, 2021 hearing).

11   **D.   Chen is detained in the Kyrgyz Republic and extradited to the United States**
12   In April 2024, Chen was detained in the Kyrgyz Republic as she attempted to leave the country
13 based on the Interpol Red Notice that requested Chen's arrest on the charges in this case.  Shortly after
14 that detention, the U.S. Attorney's Office and the Department of Justice requested that Chen be
15 extradited to the United States to stand trial.  Though there is no formal extradition treaty between the
16 United States and the Kyrgyz Republic, the Kyrgyz authorities agreed to honor the request and initiate
17 extradition proceedings.  Chen was represented by counsel in those proceedings and opposed
18 extradition.  After her challenges to extradition were denied, including her appeal of the order there, the
19 Kyrgyz authorities issued a final order of extradition and she was brought to the United States in U.S.
20 Marshal custody.  She appeared in this district on March 7, 2025.

21   **E.   Chen is twice ordered detained by the Magistrate Judge**
22   On her initial appearance in this district, the government moved for a detention hearing on the
23 grounds that Chen posed a serious risk of flight, based in part on her significant and prolonged effort to
24 avoid the United States while she knew these charges were pending.  Magistrate Judge Susan van
25 Keulen held a detention hearing on March 31, 2025, after Chen's retained counsel requested to delay the
26 detention hearing. Dkt. 128.

27   The bail study by Pretrial Services included an interview with Chen and others, and considered
28 information provided by Chen and her attorneys.  Pretrial Services recommended that Chen be detained

pending trial because Chen presents "a significant risk of non-appearance that cannot be reasonably mitigated by any combination of conditions of release." Confidential Pretrial Services Report. March 21, 2025.

The Pretrial Services report noted the following regarding Chen's finances, based on information she herself provided: Chen's only assets in the United States are a retirement account with $50,000 and partial ownership of a house in Atherton, with a value of $10 million. She also reports that "her sister in China" sends a significant about of money to the U.S., $30,000 to $70,000 at a time, to cover the mortgage, expenses, and property tax for the Atherton house, which Ye and their daughter reportedly live in. Chen's sister and mother live in Quanzhou, China, where Chen had been residing before traveling to the Kyrgyz Republic. *See* Confidential Pretrial Services Report.

After presentation of facts and argument at the detention hearing, Magistrate Judge van Keulen agreed that no conditions of release could secure her appearance, and that Chen poses a "risk of flight that cannot be mitigated." Dkt. 134 at 3 (March 31, 2025 Order of Detention).

On May 23, 2025, Chen filed a motion renewing her request for bail, and Magistrate Judge van Keulen held a hearing on that request on June 3, 2025. After hearing arguments of Chen's counsel regarding why she should be release on bail, the Magistrate Judge denied the renewed motion for bail, finding that Chen had not presented any new or changed circumstances that would warrant revisiting her order that Chen should be detained pending trial, and ordering Chen's continued detention on the basis that she "represents a risk of flight that cannot be mitigated" by conditions of release presented by Chen's counsel.[1]

**IV.   DISCUSSION**

The consideration of whether Chen poses a risk of flight can be answered initially with one significant set of facts in this case: Chen left the country in 2018 by bus on the day that she was formally accused of fraud and deception by the SEC, was aware of the criminal charges pending as of

---

[1] It is important to note that the proposed conditions of release considered and rejected by Judge van Keulen—24-hour lockdown with monitoring and supervision private armed guards—were significantly more stringent than the conditions proposed by Chen at the renewed bail hearing and in connection with this appeal of the detention order. There are no conditions that can mitigate the risk of flight here, but certainly less restrictive conditions than those already rejected cannot reasonably mitigate that risk.

March 2019 and did to return to the United States (or travel to any county that she believed would extradite her), and she never voluntarily returned to the United States. She *actually fled*, and even when she was first detained on the warrant in April 2024, she had just taken steps to extend her legal stay in China to at least December 2024. These facts alone warrant detention, to prevent her from doing this all over again and electing to remain outside the reach of law enforcement. But there are many more facts and circumstances that support the Magistrate's determination that detention is necessary in this case.

The objection to the Magistrate Judge's order of detention filed with this Court offers no new information that was not already before Judge van Keulen, and the objection attaches the same exhibits and makes the same factual assertions and arguments as made previously. There is no new information that would warrant the Court in reversing the detention decision. In addition, there is no information or explanation that warrant a different conclusion by this Court regarding the undisputed aspects of the record that would support detention, even when looking at those facts anew. For these reasons, the Court should deny the challenge to the Magistrate Judge's order of detention.

Magistrate Judge van Keulen based her decision on the "undisputed record" presented in the proceedings before her, writing:

> The Court finds that on the undisputed record in this case the Government has satisfied its burden of demonstrating that Defendant CHEN poses a flight risk that cannot reasonably be mitigated by release conditions. 18 U.S.C. §3142 (f). First, in 2018, with a civil case underway and impending criminal charges, CHEN left the country, leaving behind her minor child, her former husband, and a home located in Atherton currently valued at $10 million. Dkt. 130 at 3; 8, fn. 4. Although CHEN claims to have left to care for her mother who was suddenly injured and "in the emergency room," CHEN acknowledges that before heading to China she first travelled to Canada, by train and by bus, with a friend for a "pre-planned trip." Dkt. 130 at 3. This latter fact calls into question CHEN's proffered motive for leaving the United States. CHEN's former husband and co-conspirator was arrested in November, 2018, a fact from which it is reasonable to infer that at least as of that time, CHEN was aware of criminal charges pending against her. However, despite what would appear to be strong familial and financial ties to the U.S., CHEN elected not to return to the United States but to remain mostly in China for several years. While a fugitive, CHEN travelled internationally on business to destinations including Grenada and the Commonwealth of Dominica. Dkt. 130 at 4. It is significant that CHEN also holds a Dominican passport issued under the alias Maria Sofia Taylor. Id. at 6. Defendant CHEN's prolonged status as a fugitive demonstrates that she has access to financial means to flee again. In addition, CHEN acknowledges that in addition to her one-half interest in the home valued at $10 million noted above, she receives substantial funds on a regular basis to cover the mortgage and property taxes of that property. Dkt. 130 at 7.

Each of these points remains undisputed even after additional challenges and mostly irrelevant information submitted by the defendant both to the Magistrate Judge and to this Court.

### A. Charitable work and pinning the crime on her co-defendant

Chen's motion includes extensive discussion of issues that are not relevant to the determination of whether Chen should be detained under the standards set forth in the Bail Reform Act. For example, Chen describes her prior charity work, her regard by a handful of select former clients, and a self-serving description of how Tony Ye, her former husband, business partner, and co-defendant actually ran the EB-5 sponsoring company at the center of this visa fraud scheme.

The charitable work that Chen undertook before she fled the U.S., and that she hopes to do when released, does not impact the question of whether Chen presents a risk of flight. Any prior investment in the community, and any ties she claims years after she left the U.S., were all abandoned once before.

The efforts to pin the visa fraud scheme on co-defendant Tony Ye are misplaced and contradicted by the allegations in the indictment. Chen signed the false EB-5 visa applications that are at the center of the scheme, and the indictment alleges that both she and Ye knew the facts that made those applications were false—including that another individual controlled the EB-5 regional center though Chen was one of the signatories on the center bank accounts, that the individual investors had legal counsel not working with the regional center and investment project, though Chen worked with Ye on both.[2] The indictment also alleges that Chen and Ye together directed an individual to delete emails to prevent those communications from being obtained by law enforcement.

### B. Chen has the financial means to flee and live outside the United States

Chen's submissions, including the motion before this Court to revoke the order of detention, do not address one of the most significant circumstances that the Magistrate Judge considered, and that this Court should consider, in evaluating Chen's risk of flight—her financial resources.

By her own admission, expenses related to the $10 million home in Atherton have been paid, for years, by funds that appear to be under Chen's control. Chen herself told Pretrial Services that large

---

[2] At the sentencing hearing for co-defendant Ye, the Honorable Lucy Koh, who previously presided over this case, stated her belief that Chen was the more culpable of the two. Dkt. 129 at 96 (Transcript of Sentencing Hearing held on November 17, 2021)

amounts of money, $30,000 to $70,000 at a time,[3] are transferred to a bank account in the U.S. to cover expenses on the house that Chen claims total $15,000 a month. Regardless of the purpose of the transfers, and regardless of the unsubstantiated assertion by Chen that the money comes from her sister in China, the fact of these transfers shows that Chen has access to significant funds, beyond the reach of the government and the Court, that have been used to fund her continued life in China and would be available to fund any future flight. *See* Dkt. 134 at 2 (Order of Detention) (Chen has "access to financial means to flee again.").

Chen has proposed that the Atherton home be the lynchpin of the security posted for a release bond. As discussed at the hearings on detention, there are significant issues with this property being posted on a bond. First, the SEC has alleged that the house was partly purchased with the proceeds of the investment fraud alleged by the SEC in its complaint, and the SEC has even named the trustees who control half the house interest as relief defendants. *SEC v. Chen, et al.*, NDCA No. 18-CV-06371, Dkt. 136 at 4 (amended complaint). Second, the ownership structure indicates an effort to shield some of the house value from creditors or the SEC and indicate that the posting of the house would not have the requisite moral suasion to secure Chen's future appearance. As alleged in the SEC complaint, though the house was formerly owned by Chen and Ye, in May 2018 (while the SEC investigation was active) Chen and Ye transferred half the house to an irrevocable trust for no consideration, with their daughter as the sole beneficiary of the interest and trustees that Chen now claims are her close friends. *Id.* Given these circumstances, the government does not believe that the property is appropriate or adequate security for any bond.

C. **Chen is receiving adequate medical care while in custody**

Chen's motion to revoke detention also argues that she needs immediate and urgent medical care, asserting that she needs surgery to remove metal wires placed in her knee to facilitate healing. This argument should not affect the determination of whether Chen should be detained—especially in light of all the other circumstances that bear directly on the question of risk of flight and warrant

---

[3] The Pretrial Services Report notes that Chen said that she received $30,000 to $70,000 a month, but Chen's later submissions claim Chen misspoke, and that in fact these amounts represent the amounts used to periodically replenish the house-expense account. Dkt. 130 at 7.

detention—because (1) this argument is irrelevant to the question of risk of flight, (2) Chen has not shown that the medical condition is so urgent or significant that she must be released from custody despite the detention findings, and (3) the medical records she previously submitted indicate that the condition is being evaluated, monitored, and cared for by medical professionals while in custody.

According to medical records previously obtained by Chen and submitted under seal, Chen is receiving medical care, including for pain and stiffness in her knee, from professionals with Santa Clara Valley Healthcare, a large healthcare group that provides care in Santa Clara jails and runs hospitals and specialist networks in the area. Those records show that Chen's knee was evaluated by medical staff, including through x-rays read by a radiologist with Santa Clara Valley Medical Center Radiology. The notes of a physician assistant from a March 6, 2025 visit note that Chen told the P.A. that she "[w]ants to hold off on seeing surgeon, afraid may delay her transfer or release." Those notes also indicate that Chen was advised that the wires in her knee "may not be the source of pain" and advised her to put weight on her leg and discontinue using a brace. *See* Dkt. 130, Exhibit B (filed under seal) at 19-20.

Magistrate Judge can Keulen noted that Chen could seek temporary release for an urgent procedure that is necessary and that the jail medical care services cannot provide; however, Chen has not made a showing that she has any condition that requires urgent and immediate treatment that cannot be provided by the professionals from Santa Clara Valley Healthcare providing care to Chen.

## V.     CONCLUSION

For the reasons stated above and presented in the prior proceedings in this case, the Court should overrule the objection to the Magistrate order and deny the motion to revoke the detention order.

DATED: June 30, 2025                                  Respectfully submitted,

                                                      CRAIG H. MISSAKIAN
                                                      United States Attorney

                                                      /s/
                                                      LLOYD FARNHAM
                                                      Assistant United States Attorney