UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DANHONG "JEAN" CHEN aka MARIA SOFIA TAYLOR,<br><br>    Defendant. | Case No. 19-cr-00111-BLF-1<br><br>**ORDER DENYING DEFENDANT CHEN'S MOTION FOR REVOCATION OF DETENTION ORDER**<br><br>[Re: ECF 152] |

Defendant Danhong "Jean" Chen ("Chen") moves to revoke the detention order issued by Magistrate Judge Susan van Keulen. *See* Def.'s Mot., ECF 152. The Government opposes. *See* Gov't's Opp., ECF 153. Chen did not file a reply.

Neither party offers evidence that was not presented to Judge van Keulen, and neither party requests an evidentiary hearing. Under those circumstances, the Court may proceed without a hearing. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) ("[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate."). The Court finds this matter to be suitable for decision without oral argument.

Chen's motion is DENIED for the reasons discussed below.

## I. BACKGROUND[1]

Chen was born in China and is a naturalized United States citizen. She is 60 years old, has been a licensed attorney since 1998, and had her own immigration law firm in San Jose for many years. Chen married co-defendant Jianyun "Tony" Ye ("Ye") in 2002, and they had a daughter the same year who is a United States citizen.

*SEC Files Civil Enforcement Action Against Chen and Ye in October 2018*

Prior to the filing of criminal charges in this case, Chen and Ye were the subjects of an investigation by the Securities and Exchange Commission ("SEC") for violations of federal securities laws. *See SEC v. Jean Danhong Chen, et al.*, Case No. 18-cv-06371. The SEC alleges that Chen and Ye engaged in fraud, self-dealing, and unregistered brokerage activity in connection with offerings under the federal EB-5 Immigrant Investor Program. *See id*. On October 18, 2018, the SEC filed a civil enforcement action against Chen and Ye in this district, which is still pending. *See id*.

*Chen Leaves United States in October 2018*

According to the timeline Chen sets forth in her motion,[2] she left the United States on October 18, 2018, the day the SEC filed the enforcement action against her, and remained out of the country until 2025, when she was returned to the United States in custody. *See* Def.'s Mot. at 10. Chen claims that she left the United States to care for her mother, a resident of China, who fell and sustained serious injuries on October 16, 2018. *See id.* However, instead of flying directly to China, Chen took a train to Seattle on October 18, 2018, then went on Vancouver, and finally flew from Vancouver to China on October 19, 2018. *See id.* Chen left her minor daughter behind in the care of Ye. *See* March 28, 2025 Letter at 3, ECF 130.

*Chen Does Not Return to the United States when Ye is Charged in November 2018*

On November 20, 2018, approximately a month after Chen left the United States, Ye was charged by criminal complaint with submitting a false statement to a bank under 18 U.S.C. § 1014

---

[1] The facts in this section are not disputed.

[2] The Court accepts Chen's timeline for purposes of the present motion.

2

1  and identity theft under 18 U.S.C. § 1028(a)(7).  *See* Crim. Compl., ECF 1.  Ye was arrested on
2  the same date.  *See* Executed Arrest Warrant, ECF 6.  Chen did not return to the United States to
3  care for her minor daughter, although Chen traveled to Vancouver, London, Germany, and
4  Grenada in the months following Ye's arrest.  *See* Def.'s Mot. at 10.

Chen obtained a passport from the Commonwealth of Dominica in the name Maria Sofia Taylor in January 2019.  *See* March 28, 2025 Letter at 6.

Chen suggests that she could not travel to the United States because of the COVID lockdown in China.  However, according to Chen's own timeline, the lockdown did not begin until January 2020, more than a year after Ye's arrest.  *See id.*

*Indictment Issues Against Chen and Ye in March 2019*

On March 7, 2019, an indictment issued charging Chen and Ye with:  Counts 1-10 for visa fraud under 18 U.S.C. § 1546(a); Count 11 for obstruction of justice under 18 U.S.C. § 1512(b)(3); Count 12 for obstruction of justice under 18 U.S.C. § 1505; and Count 13 for aggravated identify theft under 18 U.S.C. § 1028A(a)(1).  *See* Indictment, ECF 27.  In addition, Ye was charged in Count 14 for identity theft under 18 U.S.C. § 1028(a)(7).  *See id.*

Ye pled entered a guilty plea on a superseding information on May 26, 2021, and thereafter was sentenced to a 12-month term of imprisonment.  *See* Minute Entry, ECF 94; Judgment, ECF 107.

Chen remained in China.  *See* Def.'s Mot. at 10.  Approximately nine months after the indictment was filed, China instituted its COVID lockdown, preventing Chen from traveling outside of China until the lockdown was lifted in March 2023.  *See id.*  Chen broke her knee in June 2023, and developed a blood clot some months later.  *See id.*

*Chen is Detained in Kyrgyzstan from April 2024 to March 2025*

Chen traveled to Kyrgyzstan on April 8, 2024 and was arrested there on April 11, 2024 pursuant to a Red Notice based the indictment in this case.  *See* Def.'s Mot. at 2, 10.  The U.S. Attorney's Office and U.S. Department of Justice requested that Chen be extradited to the United States to stand trial on the charges pending in this case.  *See* Gov't's Opp. at 5; March 28, 2025 Letter at 6.  Chen opposed extradition and appealed an adverse ruling issued by the Kyrgyzstan

1  authorities, with the result that she was detained in what she describes as "horrible conditions in
2  the Kyrgyzstani prison" for 11 months. Def's Mot. at 13. Chen finally was extradited, and made
3  her initial appearance in the Northern District of California on March 7, 2025. *See id.* at 10.

*Magistrate Judge van Keulen's Detention Orders*

Magistrate Judge van Keulen issued a written detention order on March 31, 2025, after holding a detention hearing on the same date. *See* Detention Order, ECF 134; Minute Entry, ECF 135. Judge van Keulen found "that the Government has demonstrated by a preponderance of the evidence that Defendant CHEN poses a risk of flight that cannot be mitigated" by release conditions. *See* Detention Order at 3. Judge van Keulen determined that Chen's "prior flight, which included leaving behind her family and property in this District, and the subsequent long, sustained efforts to remain out of the reach of the United States, demonstrate her strong motive to evade the pending indictment as well as the financial means to live and travel abroad." *Id*. at 3-4. Chen's argument of medical necessity for release so she can have knee surgery was rejected by Judge van Keulen on the ground that any surgery would not take place for at least several months. *See id.* at 3.

Judge van Keulen denied Chen's motion for bail review in a text-only order entered on the docket on June 3, 2025, after a further hearing on the same date. *See* Minute Entry, ECF 147; Docket Text Order, ECF 148. Judge van Keulen determined that Chen "remains a flight risk"; that Chen had not shown the existence of any new, material facts or circumstances that would warrant revisiting the prior detention order; and that the release conditions proposed by Chen were "insufficient to mitigate" Chen's risk of flight. Docket Text Order.

Chen asks this Court to revoke Judge van Keulen's detention order.

## II.   LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1); *see also United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Detention is appropriate where a defendant is either a flight risk or a danger to the community.

4

1  *See id.* It is the government's burden to show by a preponderance of the evidence that the
2  defendant is a flight risk, or to show by clear and convincing evidence that the defendant is a
3  danger to the community. *See id.*
4      When a magistrate judge orders detention without bail, the defendant may file a motion
5  before the district judge assigned to the case, seeking revocation of the detention order. *See* 18
6  U.S.C. § 3145(b); *Koenig*, 912 F.2d at 1192. The district court must "review the evidence before
7  the magistrate and make its own independent determination whether the magistrate's findings are
8  correct, with no deference." *Koenig*, 912 F.2d at 1193. "The district court is not required to . . .
9  proceed as if the magistrate's decision and findings did not exist." *Id*. However, the district court
10 should "make its own 'de novo' determination of facts," and should decide the propriety of
11 detention "without deference to the magistrate's ultimate conclusion." *Id*.

### III. DISCUSSION

13     Judge van Keulen's written detention order, and subsequent docket text order denying
14 Chen's request for bail review, were based on Judge van Keulen's determination that the
15 Government met its burden to show by a preponderance of the evidence that Chen poses a risk of
16 flight that cannot be mitigated by release conditions. *See* Detention Order; Docket Text Order.
17 Under the legal standard set forth above, this Court must review the record evidence that was
18 before Judge van Keulen and make its own independent determination whether continued
19 detention is warranted. *See Koenig*, 912 F.2d at 1193. This Court's evaluation of the evidence is
20 without deference to Judge van Keulen's legal and factual findings. *See id.* While it need not
21 ignore Judge van Keulen's decision, this Court must make a de novo determination whether the
22 Government has met its burden to show by a preponderance of the evidence that Chen is a flight
23 risk, and that her appearance cannot be assured through conditions of release.
24     The factors to be considered by the Court in making this determination are set forth in 18
25 U.S.C. § 3142(g). "The court must take into account available information concerning [1] the
26 nature and circumstances of the offense charged, [2] the weight of the evidence against the person,
27 [3] the history and characteristics of the person, including his character, physical and mental
28 condition, family ties, employment, financial resources, length of residence in the community,

community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and [4] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Motamedi*, 767 F.2d at 1407.

Chen asserts that, applying these factors, this Court should find that her appearance can be assured through the following conditions of release: (1) Chen shall deliver to the Clerk of Court the deed to her home in Atherton, California, which she says has an estimated value in excess of $10,000,000; (2) Chen's sister shall deliver to the Clerk of Court a deed for real property she purchased in 2024 for $520,000; (3) Chen's sister shall post cash bail in the amount of $50,000; (4) Chen shall be confined to her Atherton home except for approved travel for meetings with counsel, medical appointments, church attendance, and court appearances; (5) Chen shall be subject to electronic monitoring with curfew hours; (6) Chen shall surrender all travel documents, including her United States passport and the Commonwealth of Dominica passport issued to her in the name Maria Sofia Taylor; and (7) Chen shall be subject to supervision by Pretrial Services and shall adhere to any conditions imposed by the Court.

The Court finds that the conditions proposed by Chen are not sufficient to mitigate the risk of her flight sufficiently to warrant revocation of detention.

### A. Nature and Circumstances of Offense Charged

Chen is charged with multiple felony counts that carry lengthy maximum sentences: Counts 1-10 for visa fraud under 18 U.S.C. § 1546(a) carries a 10-year statutory maximum prison term; Count 11 for obstruction of justice under 18 U.S.C. § 1512(b)(3) carries a 20-year statutory maximum prison term; Count 12 for obstruction of justice under 18 U.S.C. § 1505 carries a 5-year maximum prison term; and Count 13 for aggravated identify theft under 18 U.S.C. § 1028A(a)(1) carries a 2-year maximum prison term. *See* Indictment Penalty Sheet, ECF 27. Based on Chen's age of 60, the possibility of a 20-year prison term means that she is facing what could amount to a life sentence or close to it. "This provides [her] a strong incentive [ ] to fail to appear or flee." *United States v. Hatcher*, No. 1:25-CR-00181-AKB, 2025 WL 1862472, at *3 (D. Idaho June 25, 2025).

Chen asserts that Ye received a 12-month prison sentence, and that she has accumulated more than 14 months of custodial time, considering the 11 months she was detained in the Kyrgyzstan prison and her detention after her extradition to the United States. Chen asserts that under these circumstances, she has "little incentive to flee from a prosecution for which she has likely already served the majority, if not more, of any sentence that might reasonably be imposed." Def.'s Mot. at 2. It is entirely unclear whether Chen's 11 months of custody in Kyrgyzstan, which resulted from her resistance to extradition, should be credited as time in custody for purposes of any sentence on the current charges. Moreover, Ye's relatively light sentence was imposed after he pled guilty. He was not a fugitive and he did not put the Government to the effort or expense of extraditing him. There is no reason to assume that Chen would receive an equally light sentence.

The Court finds that this factor weighs against revoking detention.

### B.  Weight of Evidence

The weight of the evidence against the defendant is the least important of the factors considered by the court, and the court may not engage in a pretrial determination of guilt or innocence. *See Motamedi*, 767 F.2d at 1408. However, it is a factor that must be considered by this Court. The Court notes that Chen's former spouse, Ye, pled guilty to the charges in the indictment. *See* Minute Entry, ECF 94. At Ye's sentencing, then-presiding Judge Lucy H. Koh indicated that Chen appeared to be the more culpable of the two. Sentencing Hrg. Tr. 96:14-15, ECF 129. The United States believed it had evidence sufficient to make it worthwhile to pursue extradition proceedings against Chen for eleven months to secure her appearance in this district.

The Court finds that this factor weighs against revoking detention.

### C.  History and Characteristics of the Person

Chen devotes the majority of her briefing to this factor, attempting to portray herself as a loving mother with familial and community ties to the Bay Area. She also submits letters from her daughter, her sister, her niece, colleagues, and church members. *See* Support Letters, Def.'s Ex. 1, ECF 152-1. Chen also argues that these relationships give her a strong motive to stay in the United States to resolve the criminal charges against her. She also asserts that her appearance can

7

1  be assured in part by offering her $10,000,000 Atherton home as security.

2  Chen's assurances are entirely unpersuasive.  As the Government points out, Chen actually
3  fled this jurisdiction on the day the SEC filed its civil enforcement against her and did not return
4  for six years, preferring to stay in a Kyrgyzstan prison for eleven months rather than acquiesce to
5  extradition to the United States to face the criminal charges against her.  The Court also finds it
6  significant that Chen obtained a passport from the Commonwealth of Dominica in another name
7  after Ye was arrested and charged.  The Court notes that the pretrial services report prepared in
8  advance of Chen's detention hearing before Judge van Keulen indicates that Chen has used a total
9  of 24 aliases/variations of her name.  *See* Pretrial Services Report, ECF 123.  With respect to the
10 Atherton home, the Government directs the Court to filings in the SEC enforcement action,
11 alleging that the home was purchased with the proceeds of investment fraud and naming the
12 trustees who control half the home as defendants in that action.  *See SEC v. Jean Danhong Chen,*
13 *et al.*, Case No. 18-cv-06371, ECF 136 (amended complaint).  It therefore is unclear whether the
14 Atherton home is appropriate or adequate security for any bond.  Having considered Chen's
15 arguments and evidence with respect to her history and characteristics, the Court does not have
16 any level of confidence that Chen would appear to face the charges against her if released from
17 detention.

18 Chen argues that her knee injury requires immediate medical care that she cannot obtain
19 while detained.  She argues that she was due for surgery before her arrest in Kyrgyzstan and that
20 the necessary surgery was delayed eleven months while she was detained there.  She states that
21 she wishes to have surgery at Stanford University Hospital, which has agreed to perform the
22 procedure as soon as she is released from detention.  To the extent Chen asks the Court to override
23 medical care determinations made by jail personnel regarding appropriate care for her knee, the
24 Court declines to do so.

25 The Court finds that this factor weighs against revoking detention.

26 **D.     Danger to the Community**

27 The Government does not argue that Chen poses a danger to the community, nor does the
28 Government need do so in order to establish that detention is appropriate.  The Government need

demonstrate either that Chen is a risk of flight or that she is a danger to the community. *See Motamedi*, 767 F.2d at 1406 ("[T]he 1984 Act permits the pretrial detention of a defendant without bail where it is demonstrated either that there is a risk of flight or no assurance that release is consistent with the safety of another person or the community.").

Accordingly, this factor is neutral.

### E. Conclusion

The Court finds that all of the relevant factors weigh against revoking Chen's detention, except the last factor, which is neutral because the Government does not assert risk to the community. Based on the record evidence and having considered the parties' arguments, this Court makes a de novo determination that the Government has demonstrated by a preponderance of the evidence that Chen's appearance cannot be assured through conditions of release.

Accordingly, Chen's motion for revocation of Judge van Keulen's detention order is DENIED.

## IV. ORDER

(1) Defendant's motion for revocation of Judge van Keulen's detention order is DENIED; and

(2) This order terminates ECF 152.

Dated: July 21, 2025

_____
BETH LABSON FREEMAN
United States District Judge