CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (415) 535-7200
    Lloyd.farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DANHONG "JEAN" CHEN <br> aka MARIA SOFIA TAYLOR, <br><br> Defendant. | CASE NO. 19-CR-00111 BLF <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Sentencing Hearing: <br> Jan. 27, 2026, at 9:00 a.m. <br> Hon. Beth Labson Freeman |

The United States respectfully submits this Sentencing Memorandum, pursuant to Federal Rule of Criminal Procedure 32 and Criminal Local Rule 32-5, in advance of the sentencing hearing for defendant Danhong Chen.

For the reasons cited below, the government concurs in the recommendation of the Probation Office and submits that a sentence of 33 months is appropriate in this case, for this defendant, and in light of this conduct. Chen is here, facing these charges, in this Court, because of the choices she made to violate the law, in more than one instance. As a licensed attorney, Chen owed a duty of candor when submitting materials to government officials and owed a duty of loyalty to her clients to faithfully represent their interests. But she breached those duties when she hid her role and the involvement of her and her co-defendant in the EB-5 projects, and when she knowingly made false statements and material omissions in the immigration petitions related to those projects. Chen went even further astray, and compounded her illegal conduct, when she made the choice to obstruct the investigations by the Securities and Exchange Commission and federal law enforcement, encouraging two separate witnesses to lie or destroy documents.

The conduct here, as well as the circumstances of her long-delayed apprehension, warrant a custodial sentence within the appropriate range called for by the Sentencing Guidelines.

## I.      BACKGROUND

### A.      Relevant Offense Conduct

#### 1.      Chen and co-defendant Ye managed EB-5 investments and visa applications

This case involves the EB-5 Immigrant Investor Program, a visa program authorized by Congress to encourage investment in the United States by foreign nationals. The EB-5 visa program offered foreign investors an opportunity for conditional residency visas and, if jobs are created by the investments, a path to permanent residency. The EB-5 program is administered and overseen by the U.S. Citizenship and Immigration Services (USCIS), and applications submitted by foreign investors for the visas are reviewed and subject to approval by USCIS. PSR, ¶ 6-9. The application submitted by foreign investors to USCIS for a visa is the I-526 petition, and that submission must include detailed information about the proposed project, the management and operation of the project, investment offering documents and agreements, and business plans, among other documents.

Often, and in this case, EB-5 projects are managed by an entity known as a "regional center," which directs the funds to the project and manages the project on behalf of the investors. PSR ¶ 6-7, 12. In order to act as a "regional center" managing approved EB-5 projects, a regional center must be approved by USCIS and submit regular reports. Proposed regional centers submit to USCIS the I-924 form, which includes information about the ownership and management of the regional center.

Chen and co-defendant Ye were involved with the EB-5 visa applications and investments at issue here in a few ways. Chen was the owner and lead partner of a small law firm, the Law Offices of Jean D. Chen, and Ye was the firm's office manager. Chen and the firm represented many of the foreign investors at issue, and Chen herself signed many of the I-526 petitions submitted on behalf of individual investors. PSR, ¶ 15. At the same time, Chen was involved in the legal representation and submission of forms to USCIS for the affiliated regional center, Golden State Regional Center, and she submitted the I-924 for Golden State Regional Center to USCIS. PSR, ¶ 15.

In addition, Ye owned and controlled Golden State Regional Center, and Ye and Chen controlled the finances of the regional center and were the only signatories on a key regional center bank account. PSR, ¶ 16, 19. Similarly, while Chen and her law firm acted at attorneys for investors, Chen and Ye were the signatories to the bank accounts for the EB-5 projects themselves, Bay Area Investment Fund I and Bay Area Investment Fund II. PSR, ¶ 20. Though the projects were portrayed to USCIS as managed by the regional center and another individual, Ye controlled and managed the projects. PSR, ¶ 18.

### 2. Chen made false statements in I-526 forms submitted to USCIS

The undisclosed involvement and control in the various aspects of these EB-5 investments, and Chen's representation of investors while also representing the regional center, give rise to the false statements supporting the visa fraud charges filed against Chen.

The I-526 petitions in this case assert that an individual identified in the Indictment and the PSR as "K.R." was the manager and controlling person for the Golden State Regional Center, and K.R. was described in the submitted business plans as the person who would be actively involved in managing the funded EB-5 projects through her role as the manager of Golden State Regional Center. PSR, ¶ 18, 20. The petitions included documents purporting to show K.R.'s leadership and role in the entities involved in the projects, including business plans, corporate documents submitted to the State of California, and

documents and agreements purportedly signed by K.R.

These statements and materials submitted to USCIS misrepresented K.R.'s role at the time that the submitted documents were purportedly prepared. Chen has admitted that she represented foreign investors at issue, and that at least from 2014 to 2017 she was in charge of preparation and submission of those I-526 petitions. Plea Agreement at 3. She admitted she was aware that attorneys in my firm represented Golden State Regional Center, and that she submitted I-924 forms for Golden State Regional Center's as part of I-526 petitions she submitted for clients. *Id.*

Chen knew that Ye participated in the finances and operation of Bay Area Investment Fund I and Bay Area Investment Fund II, the projects that Chen's clients invested in to meet the requirements of the EB-5 program. Chen was also aware that the investors, the associated regional center, and the project entities must have separate counsel—but she also knew that she or attorneys at her firm represented investors and the regional center and knew that Ye, the firm's office manager, ran Golden State Regional Center in addition to the two projects. Plea Agreement at 4.

The I-526 petitions Chen prepared and submitted to USCIS on behalf of foreign investors contained false statements about K.R.'s role as the manager of the regional center, false representations about the timing of the release and use of funds invested, and false representations about the legal representation of the regional center and new commercial enterprise. PSR, ¶ 19. Specifically, from December 2014 through December 2015, Chen prepared and submitted I-526 petitions to USCIS that included documents that identified K.R. as the "manager" of Golden State Regional Center and represented that K.R. controlled the entity and its operations. An investment document submitted with the petitions also stated that Golden State Regional Center and the investors would be represented by separate counsel. Chen has admitted that she knew these representations were false and material to the USCIS in considering the EB-5 visa applications. Plea Agreement at 4.

In her plea agreement, Chen admitted to that the EB-5 I-526 petition referenced in Count 10 of the Indictment, which Chen signed and submitted in about December 2015, contained false representations regarding individual K.R.'s role at Golden State Regional Center, and the legal representation of the alien investor, regional center, and new commercial enterprise. All the I-526 petitions submitted for investors in Bay Area Investment Fund I and II contained misrepresentations,

including by submitting the false I-924 showing K.R. as controlling Golden State Regional Center, whether they were personally signed by Chen or not.

In total, more than 100 foreign investors submitted I-526 visa petitions related to investments in Bay Area Investment Fund I and II, and each of these applications contained at least some of the false representations described above, including not disclosing the involvement of Chen or Chen's law firm with Golden State Regional Center, not disclosing Ye's control of the projects, and falsely representing that K.R. controlled and managed Golden State Regional Center.

### 3. Chen obstructs the federal investigations

The Securities and Exchange Commission began an investigation regarding Ye, Chen, Golden State Regional Center, and other individuals in about May 2015. PSR, ¶ 17. By at least June 2016, Ye and Chen knew that the SEC investigation related in part to Chen's law firm and other issues related to the solicitation of foreign investors. PSR, ¶ 22.

The individual identified in the Indictment and PSR as B.L. had assisted in bringing foreign investors to Golden State Regional Center. When B.L. learned about the SEC investigation in early 2018, B.L. met with Chen and Ye. PSR, ¶ 23. Chen, Ye, and B.L. discussed the investigation and worked together to identify and delete emails that were potentially relevant to the investigation, and Chen provided B.L. with a document listing categories of emails to be deleted. *Id.* Chen also knew that at the time Ye deleted relevant emails from an iPad and from email account accessed through B.L.'s laptop. Chen admitted that she intended to hinder or delay investigation of the EB-5 petitions submitted to USCIS by facilitating B.L.'s deletion of emails and aiding Ye in deleting emails. Plea Agreement at 5.

After learning of the SEC investigation around 2016, Chen and Ye took steps to influence K.R. to say, if asked by the SEC or law enforcement, that K.R. was the sole manager and owner of the Golden State Regional Center. PSR, ¶ 24. By asking K.R. to make false statements, Chen intended to influence, obstruct, or impede a pending proceeding. Plea Agreement at 5-6.

On October 18, 2018, the SEC filed a civil enforcement action against Ye, Chen, and other individuals, alleging that Chen and Ye defrauded EB-5 investors by, in part, failing to disclose commissions they paid themselves and covertly controlling Golden State Regional Center. PSR, ¶ 25. That action is still pending as to Chen.

### 4. Chen Left the United States in 2018 and later arrested and extradited

The day after the SEC civil complaint was filed, on October 19, 2018, Chen left the U.S for Vancouver, Canada. She took a train to Seattle, then took a bus to Canada, and within a couple days had departed to the People's Republic of China. PSR, ¶ 26.

Ye was arrested on a criminal complaint a month later, on November 19, 2018, the same day he had purchased an airline ticket to Vancouver, Canada to depart the following day. Ye was released on bond, and later charged by Indictment on March 7, 2019. The Indictment dated March 7 also included the current charges against Chen, and the Indictment was unsealed on March 25, 2019. PSR, ¶ 26. Since the date those charges were unsealed, Chen did not voluntarily return to the United States.

Chen took steps that appear to have been in preparation for fleeing the country, and evading law enforcement. Prior to leaving the U.S., Chen had obtained citizenship in the Republic of Dominica and she was issued a Dominica passport on October 12, 2018. On December 20, 2018, Chen changed her name in Dominica to "Maria Sofia Taylor," and a new Dominica passport was issued to her in that new name.

Five years after the Indictment against her was unsealed, on April 11, 2024, Chen was detained in the Kyrgyz Republic as she attempted to leave that country. The United States sought extradition based on the charges in this case. After her challenges to extradition were denied, including her appeal of the order of extradition, the Kyrgyz authorities issued a final order of extradition, and she was brought to the United States in U.S. Marshal custody. She appeared in this district on March 7, 2025.

### B. Chen's Plea Agreement

On November 4, 2025, Chen entered a guilty plea to Counts 10, 11, and 12 of the Indictment, pursuant to a plea agreement signed and submitted to the Court that day. In addition to admissions of facts that supported the guilty pleas, the parties agreed to a guidelines calculation that included a 9-level increase based on the offense involving more than 100 visa applications, and upward adjustments for abuse of a position of trust and obstruction. After deductions for acceptance of responsibility and the zero-point offender adjustment, the parties agreed the applicable total offense level is 19.

The government agreed to recommend a sentence within the applicable guidelines range. The plea agreement also includes an agreement to an enhanced search conditions and includes Chen's waiver

of her rights to appeal the conviction and sentence except on certain limited grounds.

## II. DISCUSSION

### A. Guidelines Calculation

The government agrees with the calculation of the offense level as set forth in the PSR and the plea agreement, including agreeing to the applicability of the zero-point offender reduction. The PSR calculates an adjusted offense level of 19, based on a finding that there were more than 100 visa applications involved in the offense conduct, and that Chen abused a position of trust and obstructed the investigation. Under this offense level, with Chen's criminal history, her guidelines range is 30 to 37 months. The PSR recommends a sentence of 33 months.

### B. Sentencing Considerations

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); 18 U.S.C. § 3553(a)(2). The Court should begin the sentencing process by correctly calculating the applicable guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The Court should then consider the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.

In this case, and under the facts and circumstances presented by Chen and her conduct, the Court should consider the following § 3553(a) factors in determining a sentence:

- The nature and circumstances of the offense, and the history and characteristics of the defendant
- The need for the sentence imposed—
    o to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
    o to afford adequate deterrence to criminal conduct
    o to protect the public from further crimes of the defendant
    o and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment

- The kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines in effect on the date the defendant is sentenced

18 U.S.C. § 3553(a).

### C. The Offense, Punishment, and Deterrence

In addition to the facts of the offense laid out in detail above, there are a few aspects of the charged conduct here, and Chen's response when she learned of the investigations involving her conduct, that are especially significant for the consideration of an appropriate sentence.

First, when she engaged in the criminal conduct at issue, she was a licensed attorney who had the obligation to act in her clients' best interest, to obey the laws applicable to the representation of those clients, and to be truthful to government officials and agencies. The integrity of our system depends on the integrity of attorneys who work in it, and in our immigration system attorneys such as Chen act as important gatekeepers.

Second, when the SEC began investigating, Chen took steps to derail that investigation and prevent information about her conduct from being discovered by the SEC or the FBI. She encouraged a witness to lie to the SEC and enticed another witness to destroy potentially relevant evidence.

Finally, the Court should consider the facts regarding the long delay in getting to this conviction and sentencing hearing. These circumstances strongly support the inference that her flight from the U.S. and her residence in China was intended to delay or avoid prosecution. The relevant facts include her hasty departure from the U.S. by bus over the Canadian border, the fact that she never voluntarily returned despite being a U.S. citizen with immediate family here, and the fact that it appears she did not travel to any countries with extradition treaties with the U.S. after the Indictment was unsealed. Though this conduct is not charged, it is relevant to the consideration of an appropriate sentence because it speaks to the history and characteristics of the defendant.

For these reasons the sentence in this case should reflect the seriousness of the crimes, as alleged in the charges and other relevant conduct. The sentence here should provide for both general deterrence, to deter others from similar conduct, and to deter Chen herself from repeating these choices. Each of the charges here reflect an intent to corrupt the rule of law, and to undermine the adjudicators, reviewers, approvers, and investigators that are critical to the integrity of the administration of the law.

The offense level calculation contemplates and includes some of the unique aspects of the conduct. There is an adjustment for abuse of a position of trust, recognizing the heightened duties of an attorney. There is an adjustment that reflects the scope and time frame of the conduct; more than 100 false visa documents for more than 100 foreign investors were involved, submitted over years-long period. There is an adjustment because Chen willfully obstructed the administration of justice. Each of these aspects of the guidelines calculation is significant, and the resulting sentencing range appropriately accounts for them. For this reason, a guidelines sentence is appropriate. Taking into account other considerations, including the seriousness of the conduct and Chen's efforts to stay outside the reach of this Court, a sentence above the low end of the guidelines range may be warranted.

### D. Statements from the foreign investors

The government received a number of statements from the foreign investors who hired Chen to represent them in the EB-5 visa process, or invested in the two projects that Chen and Ye were involved in. The Probation Office has provided to the Court the statements received by the government as of January 14, 2026; the government will separately submit a handful of statements received after that date. The statements are provided to the Court for context, to provide insight into the financial and emotional hardships faced by these investors in light of the later loss of both their principal investment and the opportunities to obtain permanent residency in the United States. The government does not believe that these investors are statutory victims of the crimes charged in this case—which all involve misleading immigration officials or obstructing federal investigations—and therefore these individuals are not statutorily entitled to restitution under the restitution provisions of the Mandatory Victims' Rights Act. That statute only provides for restitution "to the victim of the offense." 18 U.S.C. § 3663A(a)(1). For these reasons, the government is not seeking an order of restitution in this case.

The government has also received a request from an attorney representing some investors to allow a small number of those investors to address the Court at the sentencing hearing. The government requests that the Court permit these investors—who are clearly aggrieved and affected by Chen's conduct—to address the Court at the sentencing hearing.

### III. CONCLUSION

Based on the facts and circumstances of this case, the nature of the offense, the unique role Chen

held as an attorney and trusted gatekeeper, Chen's behavior both before and after she became a fugitive, and the need for specific and general deterrence, the government respectfully recommends a sentence of 33 months in custody.

DATED: January 20, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
LLOYD FARNHAM
Assistant United States Attorney